329 S.C. 242 (1997)
495 S.E.2d 242
SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Plaintiff-Respondent,
v.
Patricia PRITCHER, Roger Pritcher, Defendants-Respondents,
In the Interest of Ashley Pritcher, DOB: 09-24-91 minor under the age of 18, of whom Josephine Fogle, Guardian ad Litem is Appellant.
No. 2769.
Court of Appeals of South Carolina.
Submitted November 4, 1997.
Decided December 15, 1997.
Rehearing Denied January 22, 1998.
*244 William T. Toal, of Johnson, Toal & Battiste, P.A., Columbia, for appellant.
Richard B. Ness and Norma A.T. Jett, both of Early & Ness, Bamberg; and Edgar Dickson and Glenn Walters, Orangeburg, for respondents.
HOWARD, Judge:
This is an appeal by the guardian ad litem from an order of the family court dismissing a child neglect proceeding. We affirm.[1]

*245 I. ISSUES
A. Did the family court abuse its discretion by dismissing the child neglect case upon motion of the named plaintiff, South Carolina Department of Social Services (SCDSS)?
B. Did the family court abuse its discretion by denying the motion to "realign" the guardian ad litem as party plaintiff?

II. FACTS
In January of 1996, SCDSS brought this child neglect proceeding in the interest of four year old Ashley Pritcher against her divorced parents pursuant to S.C.Code Ann. § 20-7-738 (Supp.1996). The complaint alleged the minor was sexually abused by a twelve year old cousin during visitation with her father. SCDSS sought a finding of neglect against the father and court approval of a proposed treatment plan. The father and mother were the named defendants. A guardian ad litem and attorney were appointed for the child by the court as required by S.C.Code Ann. § 20-7-110(1) (Supp. 1996).
After further investigation, SCDSS determined it had insufficient evidence to prove neglect and decided to dismiss the action. However, the guardian ad litem refused to consent to dismissal. Consequently, SCDSS made a formal motion to dismiss, in which the father joined. The guardian ad litem opposed, arguing the court should hear the case even though SCDSS wished to dismiss. The guardian ad litem opined that either the father had been neglectful, or the mother abusive by subjecting the child to unnecessary medical and psychological examination. If SCDSS did not pursue the matter, the guardian ad litem asked the court to "realign" the guardian ad litem or substitute her as plaintiff in the action. The mother joined in the guardian ad litem's request to have the matter heard on its merits.
The family court dismissed the action upon motion of SCDSS and relieved the guardian ad litem of further responsibility in the proceedings. The court declined to realign the guardian ad litem as plaintiff. The guardian ad litem sought a supersedeas of that portion of the court's order relieving her *246 of further responsibility, in order to effect this appeal. This court granted the supersedeas. Only the guardian ad litem appeals.

III. DISCUSSION

A. Did the family court abuse its discretion by dismissing the child neglect case upon motion of the named plaintiff, SCDSS?
The South Carolina General Assembly has enacted a comprehensive scheme to administer welfare services. See S.C.Code Ann. § 20-7-480 et seq. (Supp.1996). The stated purpose of the intake provisions, comprising Article 7 of the Children's Code, is to:
establish an effective system of services throughout the State to safeguard the well-being and development of endangered children and to preserve and stabilize family life, whenever appropriate ... [by] establish[ing] fair and equitable procedures, compatible with due process of law to intervene in family life with due regard to the safety and welfare of all family members ... [and by] establish[ing] an effective system of protection of children from injury and harm while living in public and private residential agencies and institutions meant to serve them.
S.C.Code Ann. § 20-7-480 (Supp.1996). A guiding principle of this scheme is that "[c]hild welfare intervention into a family's life should be structured so as to avoid a child's entry into the protective service and foster care systems if at all possible." Id. Naturally, parents have the primary responsibility for the care of their children. Id.; see also Greenville County DSS v. Bowes, 313 S.C. 188, 194, 437 S.E.2d 107, 111 (1993) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents...." (quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982))). However, SCDSS has been designated as the state agency primarily responsible for implementing the child welfare scheme for the protection of children in South Carolina. S.C.Code Ann. § 20-7-480 (Supp.1996).
*247 SCDSS has statutorily assigned duties. Among those is the duty to investigate all reports of child abuse and neglect to determine if the allegations have merit. S.C.Code Ann. § 20-7-650 (Supp.1996). SCDSS has several options if they initially determine the allegations have merit. Under S.C.Code Ann. § 20-7-738 (Supp.1996), SCDSS "may petition the family court for authority to intervene and provide protective services without removal of custody if [SCDSS] determines by a preponderance of evidence that the child is an abused or neglected child and that the child cannot be protected from harm without intervention." (emphasis added). This court has previously concluded that these duties are not ministerial, but require the exercise of discretion by the agency. See In re Tyson, 282 S.C. 212, 318 S.E.2d 279 (Ct.App.1984) (holding SCDSS does not have a ministerial duty to bring petitions for termination of parental rights under section with language similar to S.C.Code Ann. § 20-7-738 (Supp.1996)).
In this case, SCDSS initially determined there was merit to the allegation of neglect, thereby resulting in intervention and the filing of the complaint. After further investigation, however, SCDSS determined the allegations were unfounded. As required by Rule 11, SCRCP, counsel informed the court that the allegation was not supported by the evidence.[2]
Just as SCDSS has the responsibility under the statutory scheme to bring meritorious allegations of child abuse and neglect before the family court, it also has the responsibility and duty to seek dismissal of those petitions subsequently determined by their investigation to be without merit. See S.C.Code Ann. § 20-7-480 & 650 (Supp.1996). Initial "indicated findings" by SCDSS of abuse or neglect "must be based upon a finding of the facts ... supported by a *248 preponderance of evidence." S.C.Code Ann. § 20-7-650(F) (Supp.1996). "All reports that are not indicated must be classified as `unfounded'." S.C.Code Ann. § 20-7-650(G) (Supp.1996). An "unfounded report" is "a report made pursuant to [Article 7 of the Children's Code] for which there is not a preponderance of evidence to believe that the child is abused or neglected. For the purposes of this article, it is presumed that all reports are unfounded unless [SCDSS] determines otherwise." S.C.Code Ann. § 20-7-490(12) (Supp.1996) (emphasis added). Thus, there is a statutorily mandated presumption that a report of abuse or neglect is unfounded where SCDSS initially determines there is not a preponderance of evidence to support it.
We find no statutory provision, rule of law, or basis in reason to distinguish between a report determined to be unfounded initially and one determined to be unfounded after further investigation in preparation for trial. Proceeding to trial on the basis of a petition which SCDSS has concluded is unfounded would violate the purposes and goals of the statutory scheme, which is to protect children while avoiding intervention into a family's life if at all possible. See S.C.Code Ann. § 20-7-480 (Supp.1996).
The dismissal of an action upon request of the plaintiff is within the discretion of the court. Bradshaw v. Ewing, 297 S.C. 242, 376 S.E.2d 264 (1989); see Rule 41(a)(2), SCRCP.[3] The family court does not abuse its discretion by dismissing an unfounded petition. See Gooding v. St. Francis Xavier Hosp., 326 S.C. 248, 487 S.E.2d 596 (1997) (abuse of discretion occurs where there is an error of law or a factual conclusion which is without evidentiary support). Since SCDSS determined the complaint was unfounded, we conclude the family court did not abuse its discretion in this case.

B. Did the family court abuse its discretion by denying the motion to "realign" the guardian ad litem as party plaintiff?
The guardian ad litem derives his or her powers and duties following appointment by the court from S.C.Code *249 Ann. § 20-7-122 & 124 (Supp.1996). The obligation is "a continuing one and continues until formally relieved by the court." S.C.Code Ann. § 20-7-124 (Supp.1996). A guardian ad litem in abuse and neglect cases is authorized by statute to, among other things: "conduct an independent assessment of the facts; ... make recommendations to the court concerning the child's welfare; ... [and] make motions necessary to enforce the orders of the court, seek judicial review, or petition the court for relief on behalf of the child." Id. The guardian ad litem argues these statutes give her legal authority to pursue this neglect proceeding on behalf of the child, independently of SCDSS; therefore, the court abused its discretion in refusing to hold a hearing and allowing the guardian ad litem to proceed as the plaintiff.
We have reviewed the report filed by the guardian ad litem, as well as her arguments to the lower court in support of her position. In the report, the guardian ad litem voiced concern for the fact that the twelve year old minor who allegedly committed the sexual abuse was not undergoing counseling. The guardian ad litem also described a home visit during the father's visitation with the minor and concluded the father was more interested in "intimidating, antagonizing and making unfounded accusations against [the mother] and interrogating Ashley on his visits, rather than channeling his time, attention and love to Ashley." She noted that the father and his fiancee videotaped the visits. The guardian ad litem observed that the minor was apprehensive and resistant to her father and his family, and she concluded the father did not have Ashley's best interests at heart, instead using her as a "pawn" in the relationship with the mother.
While each of these observations may have a bearing on the nature of the father's visitation rights with the child, they had no direct bearing on the issue before the court, that is, whether the father was guilty of neglect which resulted in sexual abuse by a twelve year old cousin.[4] Further, the guardian ad litem's argument that one of only two conclusions could be drawn from the factsi.e., either the father was *250 guilty of neglect, resulting in the sexual assault, or the mother was guilty of abuse by subjecting the child to medical and psychological treatment unnecessarilyhas no logical basis. According to the guardian ad litem's report, there were clear physical symptoms and medical support for the conclusion the minor had been sexually assaulted. The pertinent question before the court was whether or not the assault resulted from the neglect of the father. The guardian ad litem advanced no independent factual basis for this assertion which may have been overlooked by SCDSS.[5]
The guardian ad litem in this case performed her duties with great determination, as required to protect the best interests of the child. She conducted her own investigation, reported her observations and opinions to the court, and supplemented them with argument by her counsel. Though the proceeding was initiated to protect the child from neglect by the father through intervention by SCDSS, the guardian ad litem observed difficulties in the relationship between the parents and between the father and the child, which she felt should be addressed. However, once the underlying basis for intervention by the State was found to be without merit by SCDSS, the court did not abuse its discretion in refusing to broaden the scope of its inquiry. The court may, in its prerogative, reject the recommendations of the guardian ad litem. See Fleming v. Asbill, 326 S.C. 49, 483 S.E.2d 751 (1997).
For the foregoing reasons, we conclude the court did not abuse its discretion in dismissing the complaint and relieving the guardian ad litem of further responsibilities. Accordingly, the order of the family court is hereby
AFFIRMED.
HOWELL, C.J., and CURETON, J., concur.
NOTES
[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Rule 11, SCRCP, reads in pertinent part, "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay." See also Rule 3.1, SCRProfConduct ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous....").
[3] Applicable to family court under Rule 2, SCRFC. See Greenville County DSS v. Bowes, 313 S.C. 188, 437 S.E.2d 107 (1993).
[4] In the argument on the motion to dismiss, the attorney for SCDSS advised the court the father had decided to relinquish home visitation rights with Ashley in view of the present animosity and agreed to notify the mother in writing when he desired to resume visitation.
[5] We also note the guardian ad litem observed in her report, "Mrs. Pritcher continues to provide a safe and loving environment for Ashley and Ashley is very attached to her mother. Mrs. Pritcher has cooperated with all aspects required of her and continues to do so."