645 S.E.2d 245

**John DOE, individually and as Guardian and next friend for his minor child, James Doe, Petitioners,**

v.

**Robert Francis MARION, Jr., M.D., Individually, Parkwood Pediatrics Group, Carolina Family Care, Inc., Walton L. Ector, M.D., Individually, William Gamble, M.D., Individually, Malcolm Rhodes, M.D., Individually, William Fred O'Dell, M.D., Individually, Carol Graf, M.D., Individually, Carol Graf, M.D. & Associates, P.A., and Pit Marion, Individually,**

**of Whom Carol Graf, M.D., and Carol Graf, M.D. & Associates, P.A., are, Respondents.**

**No. 26323.**

Supreme Court of South Carolina.

Heard March 20, 2007.

Decided May 7, 2007.

J. Graham Sturgis, Jr., of Charleston; Gary B. Blasingame and Henry G. Garrard, III, of Blasingame, Burch, Garrard & Ashley, P.C., and Michael O. Crain, of Oliver and Crain, all of Athens, GA, for Petitioners.

Carol B. Ervin and Stephen L. Brown, of Young, Clement, & Rivers, LLP, of Charleston, for Respondents.

Justice BURNETT.

John Doe (Petitioner) brought an action on behalf of his minor son, James Doe, to recover damages arising from the sexual abuse of James Doe by Robert Francis Marion, Jr., M.D. Petitioner also alleged Carol Graf, M.D. and Carol Graf, M.D. & Associates (Respondents) were negligent in failing to report to authorities or warn future victims of Dr. Marion's predilection for child molestation. The trial court disagreed and dismissed the case. The Court of Appeals affirmed. *Doe v. Marion,* 361 S.C. 463, 605 S.E.2d 556 (Ct.App.2004). We granted Petitioner's request for a writ of certiorari to review the decision of the Court of Appeals, and we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

James Doe was a patient of Parkwood Pediatrics Group (Parkwood) from 1990 to 1998. Dr. Marion was a member of Parkwood until 1985 when he was asked to leave due to complaints of sexual abuse and molestation against him. Dr. Marion established a solo practice and began treating James Doe in 1999 after James Doe's mother transferred him from Parkwood to Dr. Marion. James Doe was allegedly sexually abused by Dr. Marion for a period of several years beginning in 1999.

Dr. Marion received psychiatric treatment from Dr. Graf beginning in 1984 for his predilection for child molestation. Dr. Graf also treated a victim of Dr. Marion who informed Dr. Graf of the molestation. Petitioner alleges Dr. Graf was negligent *per se* in her failure to notify the appropriate authorities of Dr. Marion's child molestation and abuse and in breaching her duty to report suspected sexual abuse of a child pursuant to S.C.Code Ann. § 20–7–510 (Supp.2002). Petitioner also alleges Dr. Graf was negligent under common law principles for her failure to warn "reasonably foreseeable" future minor patients of Dr. Marion. Finally, Petitioner alleges Carol Graf, M.D. & Associates, P.A., is vicariously liable for Dr. Graf's negligence.

Respondents were dismissed from the initial suit after the trial court granted their motions to dismiss under Rule 12(b)(6), SCRCP. The trial court found: (1) no common law duty to warn existed because there was not a specific threat to a specific individual; and (2) § 20–7–510 did not create a private right of action for failing to report, and if it did, it would only apply to threats to a specific child, not any possible future victims.

The Court of Appeals affirmed the dismissal in *Doe v. Marion*, 361 S.C. 463, 605 S.E.2d 556 (Ct.App.2004). The Court of Appeals found Petitioner failed to allege a specific threat necessary to compel a duty to warn and, therefore, the trial court correctly determined no legal duty existed under the common law. The Court of Appeals also found § 20–7–510 does not create a private cause of action and, consequently, the trial court correctly determined Dr. Graf was not negligent *per se*.

## ISSUES

I. Did the Court of Appeals err in finding S.C.Code Ann. § 20–7–510 (Supp.2002) does not give rise to a private cause of action for negligence *per se?*

II. Did the Court of Appeals err in finding a physician/psychiatrist is not liable under common law negligence principles for failing to report to authorities or warn future victims about the predilection for child molestation of her patient?

## STANDARD OF REVIEW

In reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court. *Williams v. Condon,* 347 S.C. 227, 553 S.E.2d 496 (Ct.App.2001). In considering a motion to dismiss a complaint based on a failure to state facts sufficient to constitute a cause of action, the trial court must base its ruling solely on allegations set forth in the complaint. *Spence v. Spence,* 368 S.C. 106, 116, 628 S.E.2d 869, 874 (2006). If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then dismissal under Rule 12(b)(6) is improper. *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999); *Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995). "The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Gentry v. Yonce,* 337 S.C. 1, 5, 522 S.E.2d 137, 139 (1999). The complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action. *Toussaint v. Ham,* 292 S.C. 415, 357 S.E.2d 8 (1987).

## LAW/ANALYSIS

### I. Negligence *Per Se*

Petitioner argues the Court of Appeals erred in affirming the trial court's dismissal of Petitioner's claims for negligence against Dr. Graf. Specifically, Petitioner contends

S.C.Code Ann. § 20–7–510 creates a private cause of action for negligence *per se.* We disagree.

Section 20–7–510 provides, in pertinent part:

(A) A physician . . . shall report in accordance with this section when in the person's professional capacity the person has received information which gives the person reason to believe that a child's physical and mental health or welfare has been or may be adversely affected by abuse or neglect.

. . .

(D) Reports of child abuse or neglect may be made orally by telephone or otherwise to the county department of social services or to a law enforcement agency in the county where the child resides or is found.[1]

Petitioner argues the statute imposes a duty on Dr. Graf to report Dr. Marion's predilection for sexual abuse and/or molestation of children to the appropriate authorities. Petitioner argues the purpose of the Children's Code [2], and specifically of the reporting statute, is to protect children from the type of harm James Doe suffered.

In determining whether a statute creates a private cause of action, the main factor is legislative intent:

The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute. . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability.

---

1. Section 20–7–510(A) was amended in 2003 and now reads: "A physician . . . must report in accordance with this section when in the person's professional capacity the person has received information which gives the person reason to believe that a child has been or may be abused or neglected as defined in section 20–7–490." The amendments do not affect the analysis of Petitioner's argument.

2. South Carolina Code Ann. §§ 20–7–10 to –9740 (1976 & Supp.2006).

*Dorman v. Aiken Communications, Inc.,* 303 S.C. 63, 67, 398 S.E.2d 687, 689 (1990) (quoting *Whitworth v. Fast Fare Markets of South Carolina, Inc.,* 289 S.C. 418, 420, 338 S.E.2d 155, 156 (1985)). When a statute does not specifically create a private cause of action, one can be implied only if the legislation was enacted for the special benefit of a private party. *Citizens of Lee County v. Lee County,* 308 S.C. 23, 416 S.E.2d 641 (1992).

While § 20–7–510 is silent as to civil liability, §§ 20–7–567 & –570 (Supp.2005)[3] do impose liability for making a false report. Sections 20–7–567 & –570 indicate the legislature intended to impose civil liability and establish private causes of action in certain instances. The fact that such language is missing from § 20–7–510 indicates the legislative intent was for the reporting statute not to create civil liability. *See Byrd v. Irmo High Sch.,* 321 S.C. 426, 433–34, 468 S.E.2d 861, 865 (1996) (finding when one provision does not include a right that is included in a related provision, legislative intent is that a right will not be implied where it does not exist); *State v.*

---

3. South Carolina Code Ann. § 20–7–567 states:
 (A) It is unlawful to knowingly make a false report of abuse or neglect.
 (B) A person who violates subsection (A) is guilty of a misdemeanor and, upon conviction, must be fined not more than five thousand dollars or imprisoned not more than ninety days, or both.
 South Carolina Code Ann. § 20–7–570 provides:
 (A) If the family court determines pursuant to Section 20–7–695 that a person has made a report of suspected child abuse or neglect maliciously or in bad faith or if a person has been found guilty of making a false report pursuant to Section 20–7–567, the department may bring a civil action to recover the costs of the department's investigation and proceedings associated with the investigation, including attorney's fees. The department also is entitled to recover costs and attorney's fees incurred in the civil action authorized by this section. The decision of whether to bring a civil action pursuant to this section is in the sole discretion of the department.
 (B) If the family court determines pursuant to Section 20–7–695 that a person has made a false report of suspected child abuse or neglect maliciously or in bad faith or if a person has been found guilty of making a false report pursuant to Section 20–7–567, a person who was subject of the false report has a civil cause of action against the person who made the false report and is entitled to recover from the person who made the false report such relief as may be appropriate, including:
 (1) actual damages;
 (2) punitive damages; and
 (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

*Hood,* 181 S.C. 488, 188 S.E. 134 (1936) ("It is presumed that the Legislature was familiar with prior legislation, and that if it intended to repeal existing laws it would have expressly done so."). Further, in *Rayfield v. South Carolina Department of Corrections,* 297 S.C. 95, 374 S.E.2d 910 (1988), this Court stated:

> [W]e are able to derive a test for determining when a duty created by statute will support an action for negligence. In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.

In determining Dr. Graf had no duty to report, we look to the purpose of the Children's Code and determine the statute in question is concerned with the protection of the public and not with the protection of an individual's private right [4]. Section 20–7–480 [5] states the purpose of the Children's Code and

---

4. Other jurisdictions have interpreted similar statutes and reached the same conclusion. For example, the Alabama Supreme Court held:
 The Child Abuse Reporting Act creates a duty owed to the general public, not to specific individuals, and, consequently, it does not create a private cause of action in favor of individuals. Therefore, to the extent that the plaintiffs rely on that statute, they fail to state a cause of action, and the trial court properly dismissed the claims insofar as they were based on the statute.
 *C.B. v. Bobo,* 659 So.2d 98 (Ala.1995); *see also Arbaugh v. Board of Educ., County of Pendleton,* 214 W.Va. 677, 591 S.E.2d 235 (2003); *Cechman v. Travis,* 202 Ga.App. 255, 414 S.E.2d 282 (1991); *Fischer v. Metcalf,* 543 So.2d 785 (Fla.Dist.Ct.App.1989); *Borne v. Northwest Allen County Sch. Corp.,* 532 N.E.2d 1196 (Ind.Ct.App.1989); *but see Ham v. Hospital of Morristown,* 917 F.Supp. 531 (E.D.Tenn.1995); *Landeros v. Flood,* 17 Cal.3d 399, 131 Cal.Rptr. 69, 551 P.2d 389 (1976).

5. Section 20–7–480 declares:
 (B) It is the purpose of this article to:
 (1) acknowledge the different intervention needs of families;
 (2) establish an effective system of services throughout the State to safeguard the well-being and development of endangered children and to preserve and stabilize family life, whenever appropriate;
 (3) ensure permanency on a timely basis for children when removal from their homes is necessary;
 (4) establish fair and equitable procedures, compatible with due process of law to intervene in family life with due regard to the safety and welfare of all family members; and

focuses entirely, although not explicitly, on the duties of the Department of Social Services (DSS). *See, e.g., S.C. Dep't of Social Servs. v. Pritcher,* 329 S.C. 242, 246, 495 S.E.2d 242, 244 (Ct.App.1997) ("SCDSS has been designated as the state agency primarily responsible for implementing the child welfare scheme for the protection of children in South Carolina.").

Petitioner cites *Jensen v. Anderson County Department of Social Services,* 304 S.C. 195, 403 S.E.2d 615 (1991), to support his contention § 20–7–510 creates a private cause of action. In *Jenson,* this Court upheld a private cause of action when a DSS worker failed to properly investigate claims of abuse of a young man. After the young man's brother was beaten to death by his mother's boyfriend, the administratix of the brother's estate brought an action against DSS and the social worker. While public officials are generally not liable for their negligence in public duties, this Court noted an exception exists when a duty is owed to an individual rather than the public, *i.e.,* a "special duty." [6]

This case is distinguishable from *Jensen* because there existed no special duty between Dr. Graf and James Doe. Dr. Graf was not a public official. She never had contact with James Doe. In fact, James Doe was not even born when Dr. Graf began treating Dr. Marion in 1984. Therefore, the Court of Appeals did not err in affirming the dismissal of the action and finding § 20–7–510 does not create a private cause of action for negligence *per se.*

---

(5) establish an effective system of protection of children from injury and harm while living in public and private residential agencies and institutions meant to serve them.

**6.** A "special duty" exists when the following six elements are present:
(1) an essential purpose of the statute is to protect against a particular kind of harm;
(2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm;
(3) the class of persons the statute intends to protect is identifiable before the fact;
(4) the plaintiff is a person within the protected class;
(5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and
(6) the officer is given sufficient authority to act in the circumstances or he undertakes to act in the exercise of his office.
*Jensen,* 304 S.C. at 200, 403 S.E.2d at 617.

## II. Common Law Negligence

 Petitioner argues the Court of Appeals erred in affirming the trial court's dismissal of Petitioner's claim for common law negligence. Specifically, Petitioner argues Dr. Graf had a duty to warn all future foreseeable victims which arose out of the "special relationship" created in the psychiatrist-patient relationship. We disagree.

 In order to prove negligence, a plaintiff must show: (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages. *Steinke v. S.C. Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) ("The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a directed verdict."). In *Faile v. South Carolina Department of Juvenile Justice,* 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002), this Court recognized five exceptions to the general rule that there is no general duty to control the conduct of another or to warn a third person or potential victim of danger:

(1) where the defendant has a special relationship to the victim;

(2) where the defendant has a special relationship to the injurer;

(3) where the defendant voluntarily undertakes a duty;

(4) where the defendant negligently or intentionally creates the risk; and

(5) where a statute imposes a duty on the defendant.

350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002).

 The defendant may have a common law duty to warn potential victims under the "special relationship" exception when the defendant "has the ability to monitor, supervise and control an individual's conduct" and when "the individual has made a specific threat of harm directed at a specific individual." *Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). In *Bishop,* this Court relied on "[t]he seminal case on the liability of one treating a

mentally afflicted patient for failure to warn or protect third persons threatened by a patient" and stated:

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Bishop,* 331 S.C. at 87, 502 S.E.2d at 82 (quoting *Tarasoff v. Regents of Univ. of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976)). The key is there must be a specific threat made by the patient to harm a readily identifiable third party. *Id.*

Petitioner argues Dr. Graf had a duty to warn James Doe because he was a member of a readily identifiable group of future patients of Dr. Marion. In *Gilmer v. Martin,* 323 S.C. 154, 157, 473 S.E.2d 812, 814 (Ct.App.1996), the Court of Appeals rejected a similar argument, holding "it is not simply foreseeability of the victim which gives rise to a person's liability for failure to warn; rather, it is the person's awareness of a distinct, specific, overt threat of harm which the individual makes towards a particular victim."

Petitioner's claim fails to allege a specific threat against James Doe necessary to create a duty to warn. Therefore, the Court of Appeals did not err in affirming the trial court's dismissal of Petitioner's claims.

### CONCLUSION

We affirm the decision of the Court Appeals and find: (1) § 20–7–510 does not create a private right of action for negligence *per se;* and (2) a physician/psychiatrist is not liable under common law negligence principles for failing to report or warn about the predilection for child molestation of her

patient in the absence of a specific threat to an identifiable party.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.