713 S.E.2d 287

**GEORGETOWN COUNTY LEAGUE OF WOMEN VOTERS, Appellant,**

v.

**SMITH LAND COMPANY, INC., Respondent.**

**No. 27006.**

Supreme Court of South Carolina.

Heard May 27, 2010.

Decided July 11, 2011.

James S. Chandler, Jr. and Amy E. Armstrong, both of Pawleys Island, for Appellant.

Norwood David DuRant, of Surfside Beach, for Respondent.

Justice PLEICONES.

This is an appeal from an order dismissing appellant's (League's) declaratory judgment action seeking a declaration that respondent had unlawfully filled wetlands and an injunction requiring it to restore those wetlands. Finding that the circuit court erred in holding that: (1) the South Carolina Department of Health and Environmental Control (DHEC)

lacks jurisdiction to regulate these wetlands; (2) respondent did not violate the South Carolina Pollution Control Act (Act);[1] and (3) the Act does not create a private cause of action, we reverse.

Respondent owns a .332 acre lot in Pawleys Island, .19 acres of which are isolated wetlands often referred to as Carolina Bays. Before developing the lot, respondent notified both the Army Corps of Engineers and DHEC of its plans. While the Corps cautioned respondent to notify DHEC before performing the work and respondent did so, it received no response from DHEC. Respondent then filled the wetlands.

The League then filed this suit seeking a declaratory judgment and related equitable relief. After a hearing, the circuit court held that DHEC does not have jurisdiction over isolated wetlands, that respondent complied with all requirements before filling the wetlands, and that the League cannot maintain this private suit under the Act. The League appeals.

## ISSUES

1) Did the circuit court err in finding DHEC did not have jurisdiction over the isolated wetlands on respondent's lot?

2) Did the circuit court err in holding that respondent met all the legal prerequisites for filling the wetlands?

3) Did the circuit court err in finding the League could not maintain a private cause of action under the Act?

## ANALYSIS

### I. DHEC Jurisdiction

██ The circuit court held that the isolated wetlands located on respondent's lot were without the jurisdiction of both the Army Corps of Engineers and DHEC, relying upon *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,* 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001). As we explained in *Spectre, LLC v. S.C. Dep't of Health and Enviro. Cntrl.,* 386 S.C. 357, 688 S.E.2d 844 (2010), *Solid Waste* holds that the Corps may not regulate

---

1. S.C.Code Ann. § 48–1–10 et seq. (2008 and Supp.2010).

isolated wetlands, but has no impact on DHEC's ability, as a state agency, to do so. While *Spectre* decided DHEC's continuing authority under the coastal management program developed pursuant to the statutory mandate found in the Coastal Zone Management Act, this Act specifically defines the waters subject to its regulation by DHEC to include isolated wetlands. See S.C.Code Ann. § 48–1–10(2) (2008).

We find the circuit court erred in holding DHEC lacked jurisdiction over the isolated wetlands located on respondent's Pawleys Island lot.

## II. *Compliance*

■ The circuit court also held that respondent "complied with all of its legal obligations prior to filling the isolated wetlands" located on its lot. The League argues, and we agree, that respondent was required to obtain a DHEC permit under S.C.Code Ann. § 48–1–90(a) (2008) before it could lawfully fill the wetlands by discharging "orange sand" into these wetlands. See § 48–1–10(6) (definition of fill substances requiring a DHEC permit includes sand).

We reverse the circuit court's order finding that respondent complied with all legal requirements for filling the wetlands as it is uncontroverted that it did so without obtaining a permit from DHEC as required by the Act.

## III. *Private Cause of Action*

■ The circuit court dismissed the League's complaint, finding that there is no private right of action under the Act, and thus the League lacked standing. We reverse.

■■ "In determining whether a statute creates a private cause of action, the main factor is legislative intent[.]" *Doe v. Marion*, 373 S.C. 390, 396, 645 S.E.2d 245, 248 (2007). Legislative intent to grant or withhold a private right of action for a violation of the statute is determined primarily from the language of the statute. *Id.*

The Act provides that "causes of action resulting from the violation of the prohibitions contained in this chapter inure to ... any person or persons damaged as the result of any such violation." § 48–1–250. The word "inure" is defined, in part, as "to become legally effective" and "accrue." Merriam-Webster's Third New Int'l Dictionary 1188 (2002). The

League alleges that its members have been harmed by respondent's unlawful filling of the wetlands in that the filling has destroyed bird and wildlife habitats, impacting the members' ability to enjoy their recreational and aesthetic interests, and that they have therefore been damaged within the meaning of the Act. We agree that the League had alleged damages sufficient to allow it to maintain this suit pursuant to § 48–1–250.[2]

The circuit court found there was no private cause of action based upon S.C.Code Ann. § 48–1–220: "Prosecutions for the violation of a final determination or order shall be instituted only by [DHEC] or as otherwise provided for in this chapter." Here, there is neither a final determination nor an order. Moreover, this suit cannot be characterized as a "prosecution." Section 48–1–220 is irrelevant.

We find the Act provides for a private cause of action in § 48–1–250,[3] and reverse the circuit court's order finding no such suit can be maintained by the League under the Act.

## CONCLUSION

The circuit court's order is

**REVERSED.**

---

**2.** The dissent addresses the League's individual and associational standing to maintain this suit. This issue was neither raised nor ruled upon below, nor do the parties mention it in their briefs. There is no standing issue before the Court other than that encompassed in the ruling that the Act does not create a private cause of action. Cf., *South Carolina Dep't of Transp. v. Horry County*, 391 S.C. 76, 705 S.E.2d 21 (2011) (issues must be raised and ruled upon to be preserved for appellate review).

**3.** The dissent would find there is no private cause of action under the Act based upon § 48–1–90(b). Leaving aside for the moment the fact that the circuit court order rests exclusively and erroneously on § 48–1–220, it is the true that § 90(b) grants the State a cause of action for violations of § 48–1–90(a). That cause of action, however, is for damages for harm to "fish, shellfish, aquatic animals, wildlife or plant life." Section 90(b) allows other governmental agencies to bring actions for damages caused by a violation of § 90(a), but does not purport to limit a private party's right to seek remedies other than damages, such as the declaratory and injunctive relief sought by the League here. Therefore, the right to maintain this private cause of action is found in § 48–1–250, and is not limited by anything in § 48–1–220, as was held by the circuit court, or in § 48–1–90(b), as is posited by the dissent.

TOAL, C.J., and BEATTY, J., concur. HEARN, J., concurring in part and dissenting in part, in a separate opinion, in which KITTREDGE, J., concurs.

Justice HEARN.

I agree with the majority that the circuit court erred in finding DHEC was without authority to regulate these wetlands and that Smith did not violate the South Carolina Pollution Control Act. However, I believe the circuit court correctly held that no private right of action was created under the Act and that the League lacked standing to bring this lawsuit. Therefore, I respectfully concur in part and dissent in part.

## I. Private Right Of Action

In finding that a private right of action exists under the Act, the majority ignores the controlling provision, section 48–1–90(b), as well as scholarly interpretations of the Act, instead choosing to rely exclusively on section 48–1–250. That section is general in nature and merely states that "[c]auses of action resulting from the violation of the prohibitions contained in this chapter inure to and are for the benefit of any person or persons damaged as the result of any such violation." In my view, this general statement stops short of creating a private right of action and actually presupposes that a valid cause of action is created elsewhere in the Act. However, the section under which the League brings this action expressly limits who may bring such an action to State entities as opposed to creating a private cause of action.

The League alleges that Smith violated section 48–1–90(a) of the Act by dumping fill materials into the wetlands without first obtaining a DHEC permit. Subsection (b) of that provision unequivocally states that actions for violations of subsection (a) "shall be *brought by the State* in its own name or in the name of the Department." (emphasis added). It further provides: "the amount of any judgment for damages recovered by the State, less cost, shall be remitted to the agency, commission, department or political subdivision of the State that has jurisdiction over . . . the wildlife or plant life damaged or destroyed." *Id.* Lastly, subsection (b) states: "[t]he civil remedy herein provided shall not be exclusive, and any agen-

cy, commission, department or political subdivision of the State with appropriate authority may undertake in its own name an action to recover such damages as it may deem advisable independent of this subsection." Thus, contrary to the view of the majority, the plain language of section 48–1–90(b) does not permit any entity other than the State or its agencies, commissions, departments, or political subdivisions to bring the cause of action asserted by the League here.

Additionally, at least one environmental scholar has stated that no private cause of action is created under the Act. *See* Randy Lowell, *Private Actions and Marine and Water Resources: Protection, Recovery and Remediation*, 8 S.C. Envtl. L.J. 143, 196 n. 369 (2000) ("[I]n South Carolina, the Pollution Control Act was originally enacted in 1950 and is extremely broad in scope.... *However, there, is no private right of action, leaving enforcement strictly to the state* .... [C]itizens and environmental groups must rely on keeping a constant vigil on developments in their communities and become parties in the permit process to protect their rights in administrative hearings.") (emphasis added).

The majority's sole reliance on section 48–1–250 ignores the section of the Act on which the League brought this action, a section which includes a specific provision on the precise issue at hand: whether or not a private right of action is created. Moreover, the majority's misplaced reliance on section 48–1–250 improperly accords controlling weight to a general statute where there is a narrow, more specific statute that permits only State entities to pursue the very remedy sought by the League in this case. *See Spectre, LLC v. S.C. Dep't of Health & Evnt'l Control,* 386 S.C. 357, 372, 688 S.E.2d 844, 852 (2010) ("Where there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect."). It is therefore of no moment that section 48–1–90(b) "does not purport to limit a private party's right to seek remedies other than damages"; because subsection (b) specifically limits the enforcement of the provisions of subsection (a) to certain actions by the State, I would not presume that the public has an unfettered right to enforce this subsection in all other instances. *See Whitworth*

*v. Fast Fare Mkts.*, 289 S.C. 418, 420, 338 S.E.2d 155, 156 (1985) ("[T]he general rule is that a statute which does not purport to establish a civil liability, but merely makes a provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability." (quoting 73 Am.Jur.2d *Statutes* § 432 (1974)). Accordingly, consistent with the specific language in section 48-1–90(b), which I believe controls, as well as scholarly interpretations of the Act, I would hold that no private right of action exists for the claim raised by the League.

## II. Standing

As an initial matter, the majority posits that the issue of the League's standing to bring this action is not preserved for our review. While the majority is absolutely correct that standing was not argued in the parties' briefs to this Court, the majority incorrectly states that it was not raised to or ruled upon by the circuit court. The circuit court's order first specifically found that the Act does not create a private cause of action. The court then went on to find that notwithstanding this conclusion, the League does not have standing to enforce the provisions of the Act. While I am cognizant that the circuit court, in a later part of its order, appeared to conflate the issue of standing and the existence of a private right of action,[4] this in no way diminishes its previous specific finding that the League lacks standing even if the Act creates a private cause of action. Because, as the majority aptly recognizes, the League did not challenge this portion of the order on appeal, the only preservation principle implicated is that the League's lack of standing is the law of the case. *See Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 160–61, 177 S.E.2d 544, 544 (1970) (holding that an unappealed ruling, right or wrong, is the law of the case). Therefore, I would hold that the

---

4. These two concepts are quite different. To have standing, an individual must generally have a personal stake in the litigation or qualify as a real party in interest. *Baird v. Charleston County*, 333 S.C. 519, 530, 511 S.E.2d 69, 75 (1999). By contrast, the determination of whether a party has a private right of action under a particular statute is merely a matter of legislative intent. *See Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 576, 614 S.E.2d 619, 622 (2005) ("The main factor in determining whether a statute creates a private cause of action is legislative intent.").

League's lack of standing to bring this action is the law of the case.

Moreover, even if this issue is properly before us and I were to agree with the majority that the Act created a private right of action, I would affirm the circuit court's holding on the merits that the League lacks standing. The three-part test to determine whether an individual or an entity has standing to bring a lawsuit is as follows:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical[."] Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. S.C. Dep't of Natural Res.*, 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The linchpin of this analysis is that the plaintiff must have a personal stake in the litigation, meaning he is the real party in interest. *Id.* at 600, 550 S.E.2d at 291. In other words, the party seeking relief must have a real, material, or substantial interest in the litigation, not a merely nominal or technical one. *Id.* "Moreover, the injury must be of a personal nature to the party bringing the action, not merely of a general nature which is common to all members of the public." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 639–40, 528 S.E.2d 647, 650 (1999). The party asserting standing bears the burden of proving all of its elements. *Sea Pines*, 345 S.C. at 601, 550 S.E.2d at 291. However, this burden is "substantially more difficult" where the party bringing the claim was not the object of the action "but rather seeks to challenge government action or inaction because of the alleged illegality." *Beaufort Realty Co. v. Beaufort County*, 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001).

I would hold the League is unable to proceed against Smith in its own name. Section 48–1–250 states any "person or persons damaged" by the alleged violation of the Act may institute a suit. The Act defines a "person" as "any individual, public or private corporation, political subdivision, government agency, municipality, industry, copartnership, association, firm, trust, estate, or any other legal entity whatsoever." *Id.* § 48–1–10(1). The League is a validly registered non-profit organization under the laws of South Carolina, and therefore it is a person under the Act. However, the League only alleges that its members have suffered an injury and not that it as an entity has been damaged. Thus, the League has no right that it can enforce in its own name and does not have individual standing.

However, a party may bring an action either in its own name as set forth above or, if certain criteria are met, in a representative capacity. "When an organization is involved, the organization has standing on behalf of its members if one or more of its members will suffer an individual injury by virtue of the contested act." *Sea Pines,* 345 S.C. at 600–01, 550 S.E.2d at 291 (citing *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). To supplement the analysis for individual standing we adopted from *Lujan,* the courts of this state have adopted another three-part test from the United States Supreme Court regarding the standing of an organization to bring a claim on behalf of its members: (1) its members would have standing to sue individually; (2) the interests at stake are germane to the organization's own interests and purpose; and (3) neither the claim asserted nor the relief sought requires the involvement of individual members. *Beaufort Realty,* 346 S.C. at 301, 551 S.E.2d at 589 (citing *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

> [T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all."

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Brock,* 477 U.S. 274, 290, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 187, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Jackson, J., concurring)). As *Brock* made clear, the policy behind permitting associational standing is to allow a group with shared resources to pursue a common, collective interest. Accordingly, our analysis must center on whether the organization seeks to enforce the rights of the group as a whole and not just the right of an individual.

Turning to the facts before us, I would find the League satisfies the first two prongs of the *Hunt* test. "South Carolina case law has specifically recognized an injury to one's aesthetic and recreational interests in enjoying and observing wildlife is a judicially cognizable injury in fact." *Sea Pines,* 345 S.C. at 601–02, 550 S.E.2d at 291–92. With that in mind, I would have little trouble concluding that individual members of the League can claim they suffered an injury in fact as a result of Smith's actions that can likely be redressed under the Act. Additionally, this interest is germane to the League's goal of furthering "the promotion of good government and the protection and conservation of natural resources, sound planning and zoning practices and protection of the quality of life within Georgetown County."

However, the League fails to satisfy the third prong of the *Hunt* test under my interpretation of it in light of the purposes underlying associational standing. In my view, in order to satisfy this prong, the organization must show that the right it seeks to vindicate is common to the membership and the interest of the harmed members in the proceedings derives from their membership. *See Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[T]he association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties."); *Creek Pointe Homeowner's Ass'n v. Happ,* 146 N.C.App. 159, 552 S.E.2d 220, 227 (2001) (opining in dicta that the plaintiff homeowner's association would have standing because its members' claim of right vested through their membership in the association). Although the League has generally averred to the harm its "members" have suffered and will continue to suffer as a result of Smith's actions, the evidence adduced before the circuit court focused on just one

of the League's members, Sue Myers, and two of her neighbors who are not members of the League. There is no evidence in the record before us that anyone other than the surrounding property owners were impacted by Smith's actions in filling in the pond.

Therefore, the evidence presented by the League demonstrated that Smith's actions affected only one member of the League. While harm to one member may be sufficient on different facts, even assuming that the League could bring a cause of action under section 48–1–250, that cause of action inures, by the statute's own terms, only to those damaged as a result of a violation of the Act. Although every member of the League does enjoy the same right to enjoy wildlife, injury to one member's right does not extend to the rest of the League. With harm occurring to only one member of the League and a cause of action thereby inuring only to that one member, the right the League is pursuing under the Act is not a common one. Further, the harm suffered by Myers does not flow from her membership in the League, but rather from her status as an individual, independent landowner. While I appreciate the League's interest in ensuring that the residents of Georgetown County comply with this State's environmental laws, I would require more than a laudable goal to establish standing. Accordingly, I would hold that even if a private right of action exists for violation of the Act, the League failed to meet its burden of establishing standing to pursue this lawsuit.

KITTREDGE, J., concurs.