**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Peach REO, LLC, a Delaware limited liability company, Respondent,

v.

Blalock Investments, LLC; Todd Smith; Debra Masuga; Subway Real Estate, LLC; and County of Spartanburg, a political subdivision of the State of South Carolina, Defendants,

Of Whom Blalock Investments, LLC; Todd Smith; and Debra Masuga are the Appellants.

And

Blalock Investments, LLC; Todd Smith; and Debra Masuga, Appellants,

v.

Capital Crossing Servicing Company, LLC, Respondent.

Appellate Case No. 2016-001764

Appeal From Spartanburg County
Gordon G. Cooper, Master-in-Equity

Unpublished Opinion No. 2019-UP-010
Heard October 9, 2018 – Filed January 4, 2019

# REVERSED AND REMANDED

Adam Crittenden Bach and Robert Hudson Smith, both of Eller Tonnsen Bach, of Greenville, for Appellants.

Francis B.B. Knowlton, Allen Mattison Bogan, and Nicholas Andrew Charles, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Respondents.

**PER CURIAM:** Blalock Investments, LLC (Blalock), Todd Smith, and Debra Masuga (collectively, Borrowers) appeal the Master-in-Equity's order dismissing their counterclaims and third-party complaint and denying their motion to amend their pleadings. We reverse and remand.

## I.

In 2008, Blalock Investments, LLC and the National Bank of South Carolina (NBSC) executed a $1.9 million promissory note (the Note), secured by a mortgage (the Mortgage) on property owned by Blalock in Boiling Springs, South Carolina (the Property). At the same time, Blalock granted NBSC a security interest in buildings, fixtures, and other personal property located on the Property. Smith and Masuga—members of Blalock—personally guaranteed the loan. In 2011, NBSC sold the Note and Mortgage to Peach REO, LLC (Peach) and Capital Crossing Servicing Company, LLC (Capital Crossing) (collectively, Lenders), who began servicing the Note, Mortgage, and security agreement. The loan had a maturity date of October 1, 2013.

The Note required Borrowers to obtain Peach's written consent before conveying or leasing the Property. According to the allegations in Borrowers' pleadings, beginning in February 2013 Borrowers presented Capital Crossing with multiple proposals they had received from third parties seeking to purchase or lease some or all of the Property; some of the proposals, according to Borrowers, had ripened into contracts. From February 2013 until June 2013, Borrowers contacted Capital Crossing several times seeking its consent to lease or convey the Property, restructure the Note and Mortgage, or deed the Property to Lenders in lieu of foreclosure. Capital Crossing responded to Borrowers' requests and asked for financial information, indicating Lenders were considering the various proposals.

Borrowers made no payments on the loan after February 2013. On April 17, 2013, Capital Crossing notified Borrowers their payments were forty-five days past due. Borrowers replied they could not generate any revenue from the Property due to their inability to lease the Property and requested Capital Crossing respond to their requests for modification of the loan.

On May 6, 2013, Capital Crossing offered to extend the term of the loan by six months if Borrowers brought the loan current and paid $200,000 by the original date of maturity, October 1, 2013. On May 9, 2013, Borrowers replied the extension was not sufficient to permit them to lease the Property and was not feasible.

On July 19, 2013, Borrowers alerted Capital Crossing that property taxes of $36,102.81 were due to Spartanburg County and, unless the taxes were paid, the Property would be sold at a tax sale in November 2013. On October 1, 2013, the loan matured with Borrowers owing a balance of $1,756,168.73. Property taxes were not paid on the Property, and the Property was sold to Cley Equities, LLC (Cley) at a tax sale in November 2013. Cley sent notice that the Property could be redeemed before February 19, 2014, for $62,633.39; before March 18, 2014, for $89,033.39; before May 19, 2014, for $125,136.27; and before August 19, 2014, for $139,963.47. Capital Crossing redeemed the Property on November 17, 2014—two days before redemption rights expired.

Following maturity, Lenders took no action for twenty-five months. During that time, Borrowers asked Capital Crossing to approve leases of the Property, approve sale offers made on the Property, accept the Property in lieu of foreclosure, or make a proposal or take any action on the Loan. Capital did not respond to some of these requests and responded to others with requests for financial information.

Peach foreclosed on the Property on October 28, 2015, claiming Borrowers owed $1,769,273.27 on the Note and Mortgage, $363,813.41 in interest, $18,569.50 in late fees, $139,963.47 in advances for real estate taxes, and $14,872.00 in advances for insurance. Borrowers responded by filing counterclaims against Peach and third-party claims against Capital Crossing for breach of contract, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), tortious interference with a contract or a prospective contractual relationship, and failure to act in a commercially reasonable manner. Lenders moved to dismiss the counterclaims and third-party claims on the ground they were all based on the failure to mitigate the amounts Borrowers owed—either by modifying the loan or consenting to Borrowers' sale or lease of the property—or an alleged breach of the implied duty of good faith and fair dealing.

The Master-in-Equity granted Lenders' motion to dismiss under Rule 12(b)(6), SCRCP, finding Lenders were "entitled to recover the full amount owed on the loan and had no duty to mitigate these damages in any way."  The Master-in-Equity also ruled Lenders had no duty to extend or modify the loan, take any immediate action after Borrowers' default, or approve any sale or lease of the property.  Further, the Master-in-Equity dismissed Borrowers' counterclaims, and ruled breach of the implied covenant of good faith and fair dealing was not an independent cause of action in South Carolina.

Borrowers filed a "Notice of Motion and Motion to Amend Judgment" asking the Master-in-Equity to amend the judgment and allow them to amend their answer, counterclaims, and third-party complaint to add causes of action for breach of contract, fraud, and negligent misrepresentation.

The Master-in-Equity denied Borrowers' request to alter or amend the judgment and held all affirmative defenses asserted by Borrowers "fail for the same reason" as their counterclaims and third-party claims.  The Master-in-Equity also denied Borrowers' motion to amend their pleadings.  This appeal followed.

## II.

On appeal Borrowers argue the Master-in-Equity erred when it denied Borrowers' request to amend their pleadings, and dismissed their counterclaims and third-party-complaint pursuant to Rule 12(b)(6), SCRCP.  We agree.

To the extent Borrowers' counterclaims and third-party claims against Lenders were dismissed pursuant to Rule 12(b)(6) for failure to state a claim, we find this was error.  In deciding a Rule 12(b)(6) motion, the court looks only at the complaint and, taking the facts alleged as true and construing all reasonable inferences and doubts in the plaintiff's favor, asks whether the complaint would entitle the plaintiff to relief under any theory. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247-48 (2007).  The pleader's likely success at trial is irrelevant to deciding whether he has properly stated a claim. *Id*.

The Master was correct that breach of the implied covenant of good faith and fair dealing is not an independent cause of action in our state. *See RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 472-73, 597 S.E.2d 881, 884 (Ct. App. 2004).  Borrowers' complaint alleged Lenders breached the contract by:

> Refusing to respond to offers to purchase or lease the property despite Borrowers' contractual obligation to get Lender's approval before selling the property or entering

certain leases;  Failing to timely communicate regarding offers to purchase or lease the Property; Repeatedly requesting documentation from Borrowers before responding to offers to purchase or lease the Property, even though the documents had already been provided and potential sales or leases were time-sensitive; By intentionally and deliberately acting to prevent Borrowers from selling the Property, leasing the Property, or otherwise taking action to limit their exposure following default.

By the terms of the Note, Borrowers agreed not to assign their "obligation under this agreement without [Lenders'] prior written approval."  More to the point, the Mortgage does not provide for assignment and states certain sales or transfers of the Property by Borrowers without Lenders' "prior written consent" may constitute a default.

At the pleading stage, we must take Borrowers' allegations as true.  Borrowers' claim in essence is that Lenders unreasonably withheld their written permission to assign the Note.  Borrowers read the contract as implying Lenders would use good faith and fair dealing when considering Borrowers' proposals to assign their obligations.  Lenders, on the other hand, contend that because the contract imposes no duty on them to agree to an assignment, they can reject Borrowers' assignment requests for any reason or no reason at all.

As the skilled Master knew, "there is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do."  *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995).  But Borrowers' argument is very precise.  They do not claim the implied covenant of good faith and fair dealing imposed a new, separate obligation on Lender.  Rather, they claim the contract gave Lender the discretion to approve assignments and the covenant of good faith and fair dealing implicitly obligated Lender to exercise that discretion in good faith.  Because Borrowers' counterclaim alleged Lenders acted in bad faith, the circuit court should not have used Rule 12(b)(6) to dismiss it.

The Master was correct that Lenders owed no duty under the contract or the law to mitigate Borrowers' losses.  *See Cisson Constr., Inc. v. Reynolds & Assocs., Inc.*, 311 S.C. 499, 502-04, 429 S.E.2d 847, 849-50 (Ct. App. 1993).  But we know of no authority in our state that bars the use of the implied covenant of good faith and fair dealing when interpreting an assignment clause in a contract.  *See, e.g., Taylor*

*Equip., Inc. v. John Deere Co.*, 98 F.3d 1028, 1035-39 (8th Cir. 1996) (2-1 decision; both majority and dissent analyze approaches to application of implied covenant of good faith and fair dealing to anti-assignment clauses).  Whether applying the covenant under the circumstances here would frustrate or protect the parties' bargained-for expectations regarding the assignment provision is a fact-laden issue that cannot be resolved at the pleading stage.  The *Taylor Equipment* decision recognized, for example, that a dishonest exercise of a contractual right to approve an assignment might run afoul of the implied covenant.  *See* 98 F.3d. at 1034.  Novel issues should not be dismissed pursuant to rule 12(b)(6) when further factual refinement might sharpen the focus.  *See Evans v. State*, 344 S.C. 60, 68, 543 S.E.2d 547, 551 (2001).

Because we reverse the Rule 12(b)(6) dismissal order, we also reverse the Master's order denying Borrowers' motion to amend its pleadings.  Borrowers sought to allege additional facts that Lenders failed to honestly communicate with Borrowers regarding their intentions for the loan following maturity, Lenders misled Borrowers into believing Lenders would accept a third-party offer to purchase or lease the Property prior to maturity, Lenders misled Borrowers into believing Lenders were responsible for the payment of property taxes, and other allegations.  These additional facts may sufficiently state a claim for breach of the contract based on the implied covenant of good faith and fair dealing, SCUTPA, tortious interference with prospective contractual relationships, and failure to mitigate damages.  *See Doe*, 373 S.C. at 395, 645 S.E.2d at 247-48.

**REVERSED AND REMANDED.**

**KONDUROS, MCDONALD, and HILL, JJ., concur.**