666 S.E.2d 901

Phyllis J. WOGAN, individually and as Personal Representative of the Estate of James J. Wogan, Petitioner,

v.

Kenneth C. KUNZE, M.D.; Hilton Head Gastroenterology, P.A.; Thomas P. Rzecycki, M.D.; Hilton Head General and Laparoscopic Surgery, P.A.; Gary W. Thomas, M.D.; and Gary W. Thomas M.D., P.A., Respondents.

No. 26542.

Supreme Court of South Carolina.

Heard May 7, 2008.

Decided Sept. 8, 2008.

Rehearing Denied Oct. 9, 2008.

582

Samuel S. Svalina and Jennifer I. Campbell, both of Svalina Law Firm, of Beaufort; and Timothy M. Wogan, of Hilton Head Island, for Petitioner.

Elliott T. Halio and Andrew S. Halio, both of Halio & Halio, of Charleston; and Mary Bass Lohr and James S. Gibson, Jr., both of Howell Gibson & Hughes, of Beaufort, for Respondents.

Frederick A. Crawford and Anthony E. Rebollo, both of Richardson, Plowden & Robinson, of Columbia, for Amicus Curiae SC Association of Certified Public Accountants.

Johannes S. Kingma and John C. Rogers, of Atlanta, and Lenna S. Kirchner, of Carlock Copeland Semier & Stair, of Charleston, for Amicus Curiae Abram Serotta & Serotta, Maddocks, Evans & Co.

Justice WALLER.

We granted a writ of certiorari to review the Court of Appeals' opinion in *Wogan v. Kunze*, 366 S.C. 583, 623 S.E.2d 107 (Ct.App.2005). We affirm the grant of summary judgment in favor of Dr. Kunze, as modified.

## FACTS

Petitioner's husband, James J. Wogan, was diagnosed with rectal cancer in 1997 and was treated with chemotherapy by

an oncologist, Dr. Thomas. Mr. Wogan developed a very severe case of diarrhea, resulting in malnutrition and dehydration, for which he was referred to Respondent, Dr. Kunze, a gastroenterologist. A colostomy was performed to stop the diarrhea but did not remedy the problem. Dr. Kunze placed Wogan on the drug Sandostatin SC, which was inserted subcutaneously three times a day and was not covered by Medicare. Sandostatin SC stopped the diarrhea within a few days.

A few weeks later, Dr. Kunze suggested Mr. Wogan try a new drug, Sandostatin LAR, which could be administered monthly, and was, according to Wogan's complaint, covered by Medicare. Dr. Kunze refused to pre-order the Sandostatin LAR and administer it in his office because he did not believe it was covered by Medicare unless the diarrhea was caused by the chemotherapy. The chemotherapist, Dr. Thomas, was of the opinion that it was not covered. Dr. Thomas also refused to prescribe and administer the medication. Dr. Kunze ultimately agreed to administer the Sandostatin LAR, but he required the Wogans to purchase the monthly doses directly from a pharmacy.

The Wogans purchased Sandostatin LAR at a cost of $2000 per month for three months.[1] Neither Dr. Kunze nor Dr. Thomas would assist them with filing a Medicare claim. Mr. Wogan died in October 2001.

Mrs. Wogan filed this action against Dr. Kunze and others, alleging (1) negligence based on both medical malpractice from the surgery and Dr. Kunze's failure to file Medicare claims for the Sandostatin LAR; (2) breach of Dr. Kunze's contract with Medicare under which it was alleged Mr. Wogan was a third-party beneficiary; (3) violations of the South Carolina Unfair Trade Practices Act (UTPA); (4) breach of fiduciary duty in failing to file the Medicare claim; and (5) loss of consortium.

The trial court granted partial summary judgment to Dr. Kunze, holding Mrs. Wogan could not assert a state law negligence claim based on Kunze's failure to comply with a federal act, where the federal act (Medicare Act) did not allow

---

1. The Wogans paid approximately $1,278 a month for Sandostatin SC; they paid approximately $2,094 a month for Sandostatin LAR.

a private right of action. The trial court further rejected Wogan's breach of fiduciary duty claim, finding the only breaches alleged (medical malpractice and failure to file a claim) had been alleged in the negligence cause of action. The Court of Appeals affirmed.[2]

## ISSUES[3]

1. Did the Court of Appeals err in affirming the trial court's ruling that Wogan could not maintain a state negligence claim against Dr. Kunze based upon his failure to file the Medicare claim?

2. Was summary judgment properly granted on the breach of fiduciary duty claim?

## STANDARD OF REVIEW

When reviewing the grant of summary judgment, this Court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether triable issues of fact exists, the evidence and all factual inferences must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). If evidentiary facts are not disputed but the conclusions or inferences to be drawn from them are, summary judgment should be denied. *Baugus v. Wessinger*, 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991). The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868 (2001).

---

2. The claims for violation of the UTPA and breach of third party beneficiary contract were also dismissed, as were the claims against Dr. Thomas. No issue is raised on certiorari regarding these claims.

3. In light of our holding, we need not address Wogan's remaining issue.

## 1. NEGLIGENCE[4]

Wogan contends the Court of Appeals erred in affirming the grant of summary judgment to Dr. Kunze. She asserts liability is based, not on a violation of the Medicare Act,[5] but upon a violation of the standard of care of a reasonable physician. Wogan claims it was a breach of the standard of care for Dr. Kunze to refuse to file a Medicare claim on her behalf. The trial court and Court of Appeals held that, inasmuch as there is no right of action under the Medicare Act, Wogan could not base her state law claim on Dr. Kunze's failure to file such a claim. We agree with the result reached in this case; however, we find the Court of Appeals' holding overly broad.

■ Contrary to the Court of Appeals' ruling, there are some circumstances in which a state law negligence claim may be maintained against a third party as a result of the denial of Medicare benefits. The United States Supreme Court addressed this issue peripherally in *Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). *Heckler* involved a suit brought by three people who were denied reimbursement for bilateral carotid body resection (BCBR) surgery and one person who declined the surgery because he was unable to pay for it. They brought an action challenging the Secretary of Health and Human Services' ruling that the surgery was neither reasonable nor necessary. Although the case involved the issue of whether the plaintiffs could maintain suit in federal court, or were first required to exhaust their administrative remedies via review pursuant to 42 U.S.C.

---

**4.** The underlying medical malpractice claims remain pending against Dr. Kunze.

**5.** Wogan does not contest the fact that case law generally holds there is no private right or action under the Medicare Act. *See Brogdon v. Nat'l Healthcare Corp.*, 103 F.Supp.2d 1322, 1340 (N.D.Ga.2000) (Congress did not intend to create a private right of action when it enacted the Medicare and Medicaid Acts and authorized their accompanying regulations); *Abner v. Mobile Infirmary Hospital*, 149 Fed.Appx. 857, 2005 WL 2090065 (11th Cir.2005) (noting that Medicare Act does not create a private right of action for negligence); *Ratmansky ex rel. Ratmansky v. Plymouth House Nursing Home, Inc.*, 2005 WL 770628 (E.D.Pa.2005) (Medicare Act and regulations do not create a private right of action against nursing home).

§ 405(g) of the Medicare Act, the Supreme Court held "[I]t seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery." 466 U.S. at 614, 104 S.Ct. 2013. Accordingly, the Court held that because the plaintiffs' claims were "inextricably intertwined" with their claim for benefits, that they were required to proceed under the Medicare Act. The Court recognized that there may be an exception in certain special cases where claims are "wholly collateral" to a claim for benefits under the Act, or where there is a colorable claim that an erroneous **"denial of benefits in the early stages of the administrative process will injure them in a way that cannot be remedied by the later payment of benefits."** 466 U.S. at 618, 104 S.Ct. 2013 (emphasis supplied).

An example of such an exception was demonstrated in *Ardary v. Aetna Health Plans of California, Inc.* 98 F.3d 496 (9th Cir.1996), *cert. denied* 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997). There, the decedent suffered a heart attack and was taken to a small, rural hospital near her home, which had neither intensive care nor cardiac facilities. The decedent's husband requested she be air-lifted to Loma Linda University Medical Center, a larger and better equipped facility, but the request was denied, and Mrs. Ardary died. Ardary filed a wrongful death suit alleging Mrs. Ardary died because of the failure to authorize an airlift to Loma Linda. The Ninth Circuit held the plaintiffs' claims were state common law claims, which were not "inextricably intertwined" with the denial of benefits. *Ardary,* 98 F.3d at 500. The court found that, "[a]lthough the Ardarys ... wrongful death complaint is predicated on Arrowest's failure to authorize the airlift transfer, the claims are not 'inextricably intertwined' because the Ardarys are **at bottom not seeking to recover benefits."** *Id.* (emphasis supplied). *But see Bodimetric Health Services v. Aetna,* 903 F.2d 480 7th Cir. (1990) (party cannot avoid Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits; if litigants may routinely obtain judicial review of these decisions by recharacterizing their claims under state causes of action, the Medicare

Act's goal of limited judicial review for a substantial number of claims would be severely undermined).

*Heckler* has been interpreted as "sweeping within the administrative review process only those claims that, at bottom, seek reimbursement or payment for medical services." *McCall v. PacifiCare of Cal.*, 25 Cal.4th 412, 106 Cal.Rptr.2d 271, 21 P.3d 1189, 1199 (2001), *cert denied* 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001) *See also Regional Medical Transport Inc. v. Highmark Inc.*, 541 F.Supp.2d 718 (E.D.Pa. 2008) (in assessing whether a claim falls into this category, courts must discount any "creative pleading" which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes).

■ Accordingly, contrary to the Court of Appeals opinion, whether a state common law action for negligence may be maintained depends, under *Heckler* and subsequent cases, on whether or not the plaintiff's claims are, at bottom, a claim seeking payment of reimbursement of sums which are alleged to be covered by Medicare, or whether the claims are wholly independent, but nonetheless stemming from the failure to provide some type of Medicare service. To the extent the Court of Appeals' opinion fails to acknowledge the possibility of a state law claim, it is hereby modified.

■ However, we concur with the result reached by the Court of Appeals. Although Wogan characterizes her cause of action as a state law claim for negligence, it is, at bottom, a claim for reimbursement of the $2000 per month which was expended on Sandostatin LAR prior to Mr. Wogan's death. Her claim is therefore "inextricably intertwined" with the refusal to file a Medicare claim and is therefore not cognizable on state law negligence grounds.[6] The grant of summary judgment to Dr. Kunze is affirmed.

---

6. We agree with Wogan's contention that the violation of a statute or regulation may, in a proper case, be used as evidence of negligence. *See e.g., Wise v. Broadway*, 315 S.C. 273, 433 S.E.2d 857 (1993); *Daniels v. Bernard*, 270 S.C. 51, 240 S.E.2d 518 (1978); *Shearer v. DeShon*, 240 S.C. 472, 126 S.E.2d 514 (1962) (causative violation of a statute constitutes negligence per se). Violation of a Medicare statute could conceivably be used to support of a state negligence claim where

## 2. BREACH OF FIDUCIARY DUTY

Wogan also asserts the trial court erred in granting summary judgment on her claim for breach of fiduciary duty. Once again, the underlying basis of the breach of fiduciary duty claim is that Wogan seeks reimbursement of the expenses she suffered by having to pay for the Sandostatin LAR for three months out-of-pocket. Pursuant to *Heckler* and *Ardary*, we find Wogan's claim is **at bottom** an attempt to recover monies which would otherwise have been paid by Medicare. Since such a claim is not cognizable as an independent state negligence claim, it was properly dismissed.

The Court of Appeals' opinion is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.

the state law claim is not inextricably intertwined with a claim for Medicare reimbursement. For example, in *Ardary*, the plaintiffs would be entitled to demonstrate that the defendant's failure to authorize an airlift to the regional hospital violated a Medicare statute or regulation, thereby causing Mrs. Ardary's untimely death.