# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Anthony Denson, as personal representative of the estate of Garland Denson, Plaintiff,

v.

National Casualty Company, Defendant.

Appellate Case No. 2021-001389

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
David C. Norton, United States District Judge

---

Opinion No. 28146
Heard September 13, 2022 – Filed March 29, 2023

---

## CERTIFIED QUESTION ANSWERED

---

Johnny F. Driggers, of Goose Creek; and Andrew S. Radeker and Sarah M. Larabee, both of Harrison, Radeker & Smith, P.A., of Columbia, all for Plaintiff.

Robert Mills Kennedy Jr., of Phelps Dunbar LLP, of North Carolina, for Defendant.

---

**JUSTICE KITTREDGE:** This Court accepted the following certified question from the United States District Court for the District of South Carolina:

> May a person entitled to bring a dram-shop action against a business maintain a negligence action against the business's insurer where the insurer failed to notify the South Carolina Department of Revenue of the business's lapse in or termination of liquor liability coverage in violation of S.C. Code Ann. § 61-2-145(C) [(2022),] and the business did not have liquor liability coverage at the time of the underlying accident?

We answer the certified question "no" and conclude section 61-2-145(C) does not create a private right of action in favor of an injured party against the business's insurer.

## I.

We discern the following facts from the limited record before us and offer them merely in an effort to provide context.[1]

Garland Denson (the decedent) was killed in an automobile accident allegedly caused by a drunk driver. The complaint alleged the at-fault driver was overserved at Royal Lanes, a bar insured by Defendant National Casualty Company (National Casualty) under a general liability policy with no liquor liability endorsement. During probate of the decedent's estate, his personal representative, Plaintiff Anthony Denson (Denson), discovered Royal Lanes did not have the required liquor liability insurance. Specifically, Denson learned National Casualty previously provided liquor liability coverage to Royal Lanes, but at the time of the accident, the business had failed to renew the liquor liability coverage, leaving only a general liability policy.[2] Liquor liability coverage is statutorily mandated for certain establishments that sell alcoholic beverages, and the failure to maintain this coverage constitutes a violation of South Carolina law. *See* S.C. Code Ann.

---

[1] A certified question does not require this Court to make findings of fact; we answer only the narrow legal question presented by the federal court. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, 437 S.C. 343, 346–47, 878 S.E.2d 896, 897–98 (2022) (recognizing this Court's role on certification is to answer questions of law, not questions of fact, and noting we must answer those questions narrowly to ensure disputed facts do not impact the analysis or alter the conclusion).

[2] Although this fact is not found in the certification order, counsel for National Casualty conceded during oral argument that Royal Lanes previously maintained a policy with National Casualty that provided liquor liability coverage.

§ 61-2-145(A) (requiring certain businesses to maintain liquor liability insurance coverage of at least $1,000,000).

As a result of this discovery, Denson filed a direct negligence action against National Casualty, rather than Royal Lanes. Denson claimed National Casualty was directly liable to the decedent's estate for failing to notify the South Carolina Department of Revenue (the department) about Royal Lanes' lapse or termination of liquor liability coverage as required by statute. In support, Denson cited section 61-2-145(C), which provides:

> *Each insurer writing liquor liability insurance policies* or general liability insurance policies with a liquor liability endorsement to a person licensed or permitted to sell alcoholic beverages for on-premises consumption, in which the person so licensed or permitted remains open to sell alcoholic beverages for on-premises consumption after five o'clock p.m., *must notify the department in a manner prescribed by department regulation of the lapse or termination of the liquor liability insurance policy* or the general liability insurance policy with a liquor liability endorsement.

(Emphasis added.)[3]

National Casualty filed a motion to dismiss, arguing section 61-2-145 did not grant the decedent's estate (or any similarly injured party) the right to bring a cause of action against the insurer. In opposing the motion, Denson relied on the concept of negligence per se. Denson specifically argued that National Casualty's violation of its statutory duty constituted negligence per se, which in turn gave rise to a private right of action against the insurance company. The district court certified the above question to resolve National Casualty's motion to dismiss. We accepted the question pursuant to Rule 244, SCACR.

## II.

This certified question requires that we interpret section 61-2-145. We are guided by our precedents, and we apply standard rules of statutory construction to determine legislative intent. *See generally Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("The cardinal rule of statutory construction is to ascertain

---

[3] It is undisputed that National Casualty did not notify the department of Royal Lanes' lapse or termination of liquor liability coverage prior to the accident.

and effectuate the intent of the legislature. Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." (cleaned up)).

### III.

Denson's argument leads with general principles of negligence per se. Armed with the insurer's statutory reporting duty under section 61-2-145(C), Denson concludes he is entitled to forgo an action against the alleged tortfeasor and sue the insurer directly. We reject this argument. To establish a claim for negligence per se based on a violation of the statute's reporting duty, Denson must first demonstrate either that National Casualty owed him a common-law duty of care, or that the legislature created a private right of action in section 61-2-145. As we will explain, no such common-law duty exists, and section 61-2-145 does not create a private right of action against the insurer. In essence, Denson's emphasis of the import of negligence per se puts the cart before the horse. The fact that a statute imposes a duty is not dispositive of a tortfeasor's liability under a negligence claim, for all statutes impose commands to do or refrain from doing something.

Our jurisprudence has at times merged the analysis for a private right of action and negligence per se because both address the question of whether the legislature intended the statute be used to impose civil liability. *See* 1 Dan B. Dobbs et al., *The Law of Torts* § 146 & n.13 (2d ed. 2011) (identifying this Court as seemingly treating the negligence per se doctrine as identical to a private cause of action (citing *Doe v. Marion*, 373 S.C. 390, 645 S.E.2d 245 (2007))); *see also, e.g.*, *Whitlaw v. Kroger Co.*, 306 S.C. 51, 52, 410 S.E.2d 251, 252 (1991) (per curiam) (analyzing whether a private cause of action for damages may be instituted under two statutes, and concluding these statutes give rise to liability only where used to establish negligence per se); *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 103–04, 374 S.E.2d 910, 914–15 (Ct. App. 1988) (using a negligence per se analysis to determine whether a statute "afford[s] a right of action for injury from the violation of a statute" (citation omitted)).

A distinction must be made, however, between (1) cases in which liability is based upon the violation of a statutory duty when there is also an underlying common-law cause of action; and (2) cases in which liability is based upon the violation of a statutory duty when there is no underlying common-law cause of action. *See*

Dobbs, *supra*, § 158 (noting the confusion between private right of action and negligence per se, but stating the distinctions "are fundamental to a coherent understanding of statutes in tort law").  As Judge Posner explained:

> Ordinarily the scope of the tort duty of care . . . is given by the common law.  And although the legislature can and sometimes does create a duty of care to a new class of injured persons, *the mere fact that a statute defines due care does not in and of itself create a duty enforceable by tort law*.  The distinction is well explained in *Marquay v. Eno*, [662 A.2d 272, 277 (N.H. 1995)]: "whether or not the common law recognizes a cause of action, the plaintiff may maintain an action under an applicable statute where the legislature intended violation of that statute to give rise to civil liability.  The doctrine of negligence per se, on the other hand, provides that where a cause of action does exist at common law, the standard of conduct to which a defendant will be held may be defined as that required by statute, rather than as the usual reasonable person standard."  *Otherwise every statute that specified a standard of care would be automatically enforceable by tort suits for damages—every statute in effect would create an implied private right of action—which clearly is not the law.*

*Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (cleaned up) (emphasis added).

In any negligence cause of action, it is of course essential the plaintiff establish that a legal duty of care was owed *to the plaintiff* by the defendant.  *See Bass v. Gopal, Inc.*, 395 S.C. 129, 134, 716 S.E.2d 910, 913 (2011) ("In any negligence action, the threshold issue is whether the defendant owed a duty to the plaintiff."); *Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998) ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff.  Without a duty, there is no actionable negligence." (citing *Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 320 S.C. 253, 464 S.E.2d 330 (1995))).  That duty may arise from the common law or a statute.  *Steinke v. S.C. Dep't of Lab., Licensing & Regul.*, 336 S.C. 373, 388, 520 S.E.2d 142, 149 (1999) (quoting *Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 304 S.C. 195, 199, 403 S.E.2d 615, 617 (1991)).

Here, Denson's counsel conceded at oral argument that the threshold inquiry is whether section 61-2-145 gives rise to a private right of action.[4]  We take this to

---

[4] Justice Few questioned Denson's counsel on the matter at oral argument, stating,

mean he admits the insurance company owes no common-law duty to an injured third-party under these facts—an unremarkable position with which all readily agree. Thus, negligence per se only applies in this case if we find the statute creates a private right of action, for it is axiomatic in cases where no common-law cause of action exists, negligence per se only comes into play when a statute grants the plaintiff a right to sue the chosen defendant. *Cf.* 57A Am. Jur. 2d *Negligence* § 683 (2022) ("[T]he negligence per se doctrine *does not create a duty of care* but merely sets a standard of care by which the defendant may be judged in the common-law action, and therefore, *the absence of an underlying common-law duty renders the presence of a statutory standard of care irrelevant.* A statutory duty or standard may establish an essential element for a negligence action; however, *it does not provide the cause of action,* but rather the duty or standard of care, statutory or otherwise, is merely an element of proof that comes into play *after* an action has been rightfully commenced *pursuant to the preexisting common-law cause of action.* On the other hand, when a statute creates a duty of care and sets the standard by which a breach is measured, the statute no longer gives rise to a negligence per se claim but rather creates a right of action." (emphasis added) (footnotes omitted)).[5]

---

"The question here is whether there is a duty that extends to your client—in other words, whether there is a private right of action under this statute. If the answer is no, then negligence per se never comes into the equation. If the answer is yes, then maybe negligence per se comes into the question if there is a violation." Counsel responded, "That's correct, Your Honor." The dissent suggests we are using counsel's statements at argument in a "gotcha" game. We disagree. We have not treated counsel's concession as dispositive; rather we merely note Denson's counsel's acknowledgement of the obvious—the threshold question is whether the legislature intended the statute to create a private right of action. The dissent makes the same error Denson does, that is, equating principles of negligence per se as proof that the legislature intended to create a private right of action. Acceptance of Denson's position would eviscerate our public duty rule by transforming virtually all statutes to private causes of action.

[5] In applying South Carolina law, the district court has acknowledged that, "Generally, a statute must permit a private cause of action in order for plaintiffs to maintain a civil suit for negligence per se." *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 683 (D.S.C. 2021) (cleaned up); *see, e.g.,* *Williams v. Hill Mfg. Co.*, 489 F. Supp. 20, 21–22 (D.S.C. 1980) ("In South Carolina, the violation of an applicable statute is 'negligence per se.' And it is clear

If the Court determines the General Assembly did not intend the statute create a private right of action, and there is no underlying common-law duty owed by the defendant to the plaintiff, then the Court need not undertake further analysis. This is so because the presence of a duty in a statute—the basis of the doctrine of negligence per se—may not be construed as automatically creating a private right of action. *See Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 393 S.C. 240, 246–48, 711 S.E.2d 908, 911–12 (2011) (concluding a statute did not impose a duty on the defendant where the defendant's "duty to report under the [statute] cannot give rise to civil liability"); *see also* 57A Am. Jur. 2d *Negligence* § 705 (2022) ("A statute creates no liability to the person injured unless it discloses an intention, express or implied, that from disregard of the statutory command, a liability for resultant damage arises, *which would not exist but for the statute*." (emphasis added)).

## A.

Denson asks us to recognize a duty of care *based on the statute alone* running from National Casualty to himself to ensure his ability to be compensated for injuries caused by a drunk-driving accident. Because there exists no common-law right of action against National Casualty in this case, [6] we turn first to whether the statute gives rise to a private cause of action.[7]

---

that with regard to this rule, South Carolina has adopted the statutory purpose doctrine and has used the[se] three tests[—(1) whether the legislature intended to create a private liability, as distinguished from one of a public character; (2) whether the person injured is a person or a member of a class for whose benefit or protection the law is enacted; and (3) whether the injury complained of was such as the enactment was intended to prevent—]in applying it." (internal citation omitted)).

[6] *See Major v. Nat'l Indem. Co.*, 267 S.C. 517, 520, 229 S.E.2d 849, 850 (1976) (stating that absent privity of contract between the plaintiff and the insured, the plaintiff has no common-law right to maintain suit directly against the insurer).

[7] In an attempt to shore up its argument, the dissent cites to a case from the Kansas Supreme Court, *Shirley v. Glass*, 308 P.3d 1 (Kan. 2013). In *Shirley*, however, the Kansas Supreme Court did not have to consider whether the statute gave the plaintiff a private right of action because the plaintiff had a common-law cause of action against the defendant. *Id.* at 5–6. *Shirley* therefore has no applicability here. *See Kudlacik v. Johnny's Shawnee, Inc.*, 440 P.3d 576, 582–83 (Kan. 2019) (distinguishing *Shirley* from a dram shop case in which "a duty of care [was] based

The main factor in determining whether a statute gives rise to a private cause of action is legislative intent, which is determined primarily from the language of the statute. *Kubic v. MERSCORP Holdings, Inc.*, 416 S.C. 161, 168, 785 S.E.2d 595, 599 (2016); *Georgetown Cnty. League of Women Voters v. Smith Land Co.*, 393 S.C. 350, 353, 713 S.E.2d 287, 289 (2011) (quoting *Marion*, 373 S.C. at 396, 645 S.E.2d at 248). Generally, when a statute does not expressly create civil liability, a duty will not be implied unless the statute was enacted for the special benefit of a private party. *Marion*, 373 S.C. at 397, 645 S.E.2d at 248; *see also 16 Jade St., L.L.C. v. R. Design Constr. Co.*, 405 S.C. 384, 389–90, 747 S.E.2d 770, 773 (2013) (applying the rules for establishing a private cause of action in the context of determining whether a statute imposes a legal duty); *Citizens for Lee Cnty., Inc. v. Lee Cnty.*, 308 S.C. 23, 28, 416 S.E.2d 641, 645 (1992) ("The threshold consideration here is whether or not [plaintiffs] . . . have an implied cause of action under the statute, since no private right of action is expressly provided. . . . [T]his Court held that assuring that legislation was enacted for the special benefit of the private party is a test for determining whether a right of private action is created by implication." (citation omitted)). "In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability." *Whitworth v. Fast Fare Mkts. of S.C.,*

---

on the statutes alone," and noting that in Kansas, "negligence per se requires proof [the] defendant violated [the] statute, that [the] violation caused [the] plaintiff's damages, *and that [the] Legislature intended [an] individual right of action for [the] injury arising out of [that] violation*" (emphasis added) (citation omitted)). *Shirley* and Kansas law support this majority opinion, not the dissenting opinion. More to the point, the approach taken by the dissent has been explicitly and repeatedly *rejected* by the Kansas Supreme Court. *Id.* (noting a common-law or statutory duty (i.e., cause of action) must exist *prior* to any application of negligence per se); *Pullen v. West*, 92 P.3d 584, 593–94, 597 (Kan. 2004) (concluding negligence per se was inapplicable where the legislature did not intend to establish a private cause of action for violations of the statute); *Kan. State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 603 (Kan. 1991) ("Violation of a statute alone does not establish negligence per se. The plaintiff must also establish that an individual right of action for injury arising out of the violation was intended by the legislature."). Perhaps the reason for this is that, as noted above, the dissent's approach would allow every statute imposing a duty to in effect create an implied private right of action—the exact outcome Judge Posner warned against in *Cuyler*. *See* 362 F.3d at 952.

*Inc.*, 289 S.C. 418, 420, 338 S.E.2d 155, 156 (1985) (quoting 73 Am. Jur. 2d. *Statutes* § 432 (1974)); *see also Rayfield*, 297 S.C. at 103, 374 S.E.2d at 914 ("In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.").

**B.**

Applying the above principles, we turn to Denson's claim that the decedent's estate may maintain a private cause of action against National Casualty pursuant to section 61-2-145. Subsection (A) provides that businesses "licensed or permitted to sell alcoholic beverages for on-premises consumption . . . [are] required to maintain a liquor liability insurance policy or a general liability insurance policy with a liquor liability endorsement for a total coverage of at least one million dollars." S.C. Code Ann. § 61-2-145(A). Additionally, "Failure to maintain this coverage constitutes grounds for suspension or revocation of the [business's liquor] permit or license." *Id.* As for insurers that provide businesses with this requisite liquor liability coverage, subsection (C) provides an insurer "must notify the department . . . of the lapse or termination" of its insured's liquor liability coverage. *Id.* § 61-2-145(C).

Based on this language, Denson asserts the subsection (C) duty on the insurer creates a private right of action. We disagree and hold the legislature did not intend to create a private right of action.[8] First, a statutory right to maintain an action against the insurer here would contravene common law. In *Major ex rel. Major v. National Indemnity Co.*, this Court explained, "At common law, no right to maintain suit directly against the insurer existed absent privity of contract between the claimant and the insured. *Because direct actions against the insurer contravene[] common law, such a right must be expressly sanctioned by the legislature and not [be] merely inferentially deduced*." 267 S.C. 517, 520, 229 S.E.2d 849, 850 (1976) (emphasis added) (citation omitted). Moreover, "legislation in derogation of common law must be strictly construed under settled principles enunciated by this Court." *Id.*; *see also Doe v. Marion*, 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct. App. 2004) ("A rule of statutory construction is that any legislation which is in derogation of common law must be strictly construed and not extended in application beyond clear legislative intent. Therefore, a statute

---

[8] If our effort to discern legislative intent is not correct, the legislature may, of course, amend the statute to clearly provide for a private right of action.

is not to be construed in derogation of common law rights if another interpretation is reasonable." (citation omitted)), *aff'd*, 373 S.C. 390, 645 S.E.2d 245.

We thus conclude section 61-2-145 does not create a private cause of action against an insurer for its failure to report an insured's lapse or termination of liquor liability coverage. Standing alone, the lack of an express sanction for a direct right of action leads us to conclude there is no statutory right to maintain an action against the insurer here. *Major*, 267 S.C. at 520, 229 S.E.2d at 850.

## C.

Nonetheless, we go further and conclude subsection (C) likewise does not support a claim for negligence per se because the essential purpose of subsection (C) is not to protect against the type of harm suffered by the decedent. Subsection (C) does not satisfy the first element of the two-part *Rayfield* test. *See Rayfield*, 297 S.C. at 103, 374 S.E.2d at 914 (providing the plaintiff must show "that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered"). As evidenced by the language of the statute, subsection (C) is part of a larger regulatory scheme intended to ensure that certain businesses maintain liquor liability insurance. This scheme is clearly intended to primarily promote the public safety and welfare, not to benefit a private party. *Kubic*, 416 S.C. at 169, 785 S.E.2d at 599 ("Our rules of construction allow this Court to infer a cause of action '*only* if the legislation was enacted for the special benefit of a private party.'" (quoting *Marion*, 373 S.C. at 397, 645 S.E.2d at 248)); *see also* 57A Am. Jur. 2d *Negligence* § 668 (2022) ("Where a statutory provision does not define a standard of care but merely imposes an administrative requirement, such as the requirement to obtain a license or to *file a report to support a regulatory scheme*, violation of such requirement *will not support a negligence per se claim*." (emphasis added)). Of course, we acknowledge that the insurance requirement will ultimately benefit private parties, but the same can be said of all statutes mandating insurance coverage. A finding that the legislature intended to create a private right of action requires more than simply demonstrating a plaintiff may potentially benefit.

Moreover, when read as a whole, section 61-2-145 is primarily aimed at regulating the insured's actions and secondarily aimed at imposing a reporting requirement on the insurer. This is evidenced by the statute's failure to provide any consequence for the insurer. Conversely, the statute clearly provides for penalties against the insured-business should it fail to maintain the requisite liquor liability coverage. *See* S.C. Code Ann. § 61-2-145(A) ("Failure to maintain this coverage constitutes grounds for suspension or revocation of the permit or license."). The fact that the legislature delineated consequences for insureds but did not do the same for

insurers further supports our conclusion that the statute does not create an implied private right of action against insurers. *See Kubic*, 416 S.C. at 170, 785 S.E.2d at 600 ("When the legislature delineated who would be able to bring a suit pursuant to [the statute in question], it chose not to afford that right to [the plaintiffs]. We decline to imply [legislative intent from] deliberate silence because to do so would be to rewrite the statute."). Accordingly, the enforcement mechanism of the statute is the department's authority to suspend or revoke a business's liquor license, not civil liability on behalf of the business's insurer. *See Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 122, 678 S.E.2d 430, 434 (2009) (concluding the provided enforcement mechanism of a statute indicated the legislature did not intend to create civil liability as another means of enforcement).

We do not suggest that there are no consequences for an insurer's failure to notify the department of the lapse or termination of liquor liability coverage. The department has the authority to sanction an insurer for violating section 61-2-145. *See, e.g.*, S.C. Code Ann. § 38-2-10(A) (Supp. 2022) ("[T]he following administrative penalties apply for each violation of the insurance laws of this State . . . subject to enforcement by the Department of Insurance: (1) If the violator is an insurer, . . . the [department's] director or his designee shall fine the [insurer] in an amount not to exceed fifteen thousand dollars, suspend or revoke the [insurer's] authority to do business in this State, or both. If the violation is [willful], the director or his designee shall fine the [insurer] in an amount not to exceed thirty thousand dollars, suspend or revoke the [insurer's] authority to do business in this State, or both.").

## IV.

We conclude section 61-2-145 does not give rise to a private right of action. We answer the certified question "no" and hold a person entitled to bring a dram-shop action against a business may not maintain a negligence action against the business's insurer based on the insurer's violation of section 61-2-145(C).

**CERTIFIED QUESTION ANSWERED.**

**FEW and JAMES, JJ., concur. HEARN, J., dissenting in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE HEARN:** Today, I dissent because the majority conflates two independent, well-recognized legal concepts—the doctrine of negligence *per se* and implied private rights of action. I begin with stating the question actually asked by the federal court, not the one answered by the majority. The federal court asks whether Denson can maintain *a negligence action* against National Casualty for its failure to comply with South Carolina law. I would answer that question "yes."

The certified question presupposes Denson's ability to bring a dram shop action against the business insured by National Casualty. Unlike many states, South Carolina does not have specific dram shop statute.[9] Elsewhere, private rights of action have been recognized where the legislature has explicitly *created* a cause of action due to public policy concerns; however, a court can also find private rights of action if it determines the statute implies that result.[10] This is the path that has heretofore been followed in South

---

[9] *See generally,* N.C. Gen. Stat. Ann. § 18B-121 ("An aggrieved party has a claim for relief for damages against a permittee or local Alcoholic Beverage Control Board if . . . ."); Ga. Code Ann. § 51-1-40 ("[A] person who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, knowing that such person will soon be driving a motor vehicle, or who knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person when the sale, furnishing, or serving is the proximate cause of such injury or damage."); and Tenn. Code Ann. § 57-10-102 (stating liability may be imposed if a jury determines that the defendant either sold to a minor or "[s]old the alcoholic beverage or beer to a visibly intoxicated person and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold").

[10] *See* S.C. Jur. Action § 14 ("In determining whether a private remedy is implicit in a statute not expressly providing one, the court has considered as relevant factors whether the plaintiff is one of the class for whose special benefit the statute was enacted, whether there is any indication of legislative intent, explicit or implied, either to create or deny such a remedy, and whether it is consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff.")

Carolina. For example, in 1990, the court of appeals decided *Daley v. Ward*, wherein an injured motorist had been awarded a verdict in a suit against a bar and its allegedly overserved patron. Although the South Carolina statute proscribing the sale of beer or wine to any person while in an intoxicated condition did not specifically create a private right of action, the court determined the General Assembly had intended to do so. *Daley v. Ward*, 303 S.C. 81, 84, 399 S.E.2d 13, 15 (Ct. App. 1990) ("[W]e [previously] noted that the purpose of the statute is to protect not only the individual served in violation of the statute, but also the public at large, from the possible adverse consequences."). That analysis requires specific findings and accordingly is appropriately rare.

Conversely, negligence actions are among the most common brought by plaintiffs across the country. Negligence *per se* is a doctrine, used in tandem with a negligence claim, to establish two of the elements of negligence—duty and breach. In order to use a statute for this purpose, plaintiffs must establish a duty owed through proving two recognized criteria: "(1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute intended to protect." *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 103, 374 S.E.2d 910, 914 (Ct. App. 1988). Those two elements ensure that the statute proposed as a basis of duty and breach is being used properly. Both elements are designed to limit negligence *per se*'s use to actions where the plaintiff is owed a duty arising from the statute. *See* S.C. Jur. Negligence § 12 ("To show that the defendant *owes him a duty of care arising from a statute*, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect." (emphasis added)).

In South Carolina, negligence *per se* has been used to establish duty and breach within the context of automobile accidents for 100 years. *See Cirosky v. Smathers*, 128 S.C. 358, 359, 122 S.E. 864, 865 (1924) ("[The city ordinance] in effect prohibits operation by an unlicensed person and by one under 16 years of age. In this case the operator was both unlicensed and under 16. His operation was therefore unlawful and negligence *per se*."). *Cirosky* represents the classic example of negligence *per se* within the

automobile collision context: a driver breaking a law and therefore breaching his duty to members of the public at large. *Id.* at 358, 122 S.E. at 864.

In 1933, this example was expanded upon in *Lawrence v. Southern Railway – Carolina Division*, 169 S.C. 1, 2, 167 S.E. 839, 840 (1933). There, the Court held that a railroad car's failure to comply with a signaling statute constituted negligence *per se* even though the car was at a complete stop. *Id.* at 2, 167 S.E. at 840. In *Lawrence,* the plaintiff recovered damages as a result of running into an unlit railroad car while it was parked on Charleston's King Street after midnight. *Id.* at 5, 167 S.E. at 844. To determine whether the statute could be used as evidence of negligence *per se*, the Court considered not only legislative intent but whether the plaintiff was one of the intended beneficiaries: "[t]he purpose of the signal statute was to warn the unwary. It was designed to arouse the traveler upon the highway approaching a railroad crossing who might be momentarily abstracted or inadvertent." *Id.* at 12, 167 S.E. at 843. The *Lawrence* Court allowed the plaintiff to recover, even though he was the driver and may have been negligent himself in driving into the parked railcar,[11] because the statute was intended to protect the public from unseen railcars as hazards on the roadway.

In *Norton v. Opening Break of Aiken, Inc.*, the use of negligence *per se* was expanded even further. 319 S.C. 469, 470, 462 S.E.2d 861, 862 (1995). In *Norton*, the bar's breach of an underage drinking statute was used as evidence of duty and breach in a negligence action. *Id.* at 469, 462 S.E.2d at 862. Opening Break owned a bar in Aiken and allowed one of its employees to host a party on its premises after hours. *Id.* The party included numerous minors drinking alcohol, one of whom drove home intoxicated, killing Jerry Norton, whose estate sued in negligence. *Id.* at 469, 462 S.E.2d at 862.

---

[11] The Court's *Lawrence* decision was before South Carolina's adoption of comparative negligence in 1991 and therefore part of this discussion was centered around whether the plaintiff could overcome the defense of contributory negligence. *See generally, Nelson v. Concrete Supply*, 303 S.C. 243, 399 S.E.2d 783 (1991) (adopting comparative negligence in South Carolina, which was later codified). Regardless, the negligence *per se* analysis is instructive.

Though Opening Break did not provide the alcohol to minors, the Court still ruled that the bar breached 23 S.C. Code Ann. Reg. 7-31 (Supp. 1994) which "prohibits ABC licensees from knowingly allowing persons under age 21 to drink alcohol on the licensed premises." *Id.* at 470, 462 S.E.2d at 862. The court of appeals provided this negligence *per se* analysis of the regulation in question:

> Although the law does not imply an automatic duty to the public at large whenever a statute is violated, a rule forbidding a licensee of the Alcoholic Beverage Control Commission to facilitate consumption of alcohol by a minor is designed to protect both the minor who consumes the alcohol and those members of the public likely to be harmed by the minor's consumption of that alcohol. It follows that a third party harmed by the minor's consumption has an action against the licensee who violated the statute.

*Norton v. Opening Break of Aiken*, 313 S.C. 508, 512, 443 S.E.2d 406, 408 (Ct. App. 1994) (citations omitted). This Court subsequently affirmed the court of appeals' decision and adopted its reasoning. *Norton* at 470, 462 S.E.2d at 862 (citing *Tant v. Dan River, Inc.*, 289 S.C. 325, 345 S.E.2d 495 (1986) (regulations have the force of law; violation of a regulation may constitute negligence *per se*); *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251 (1991) (setting forth two-pronged test for determining when a duty created by statute or regulation will support an action for negligence)). Because the underage drinking regulation was intended to protect against the kind of harm the plaintiff suffered, the plaintiff was permitted to use it as the basis of a negligence *per se* analysis. This is exactly what Denson should be permitted to do here.

In *Whitlaw v. Kroger Co.*, the Court transformed a certified question asking if a statute created a private cause of action into an opportunity to address whether negligence *per se* could be used in conjunction with the statute at issue.[12] 306 S.C.

---

[12] The majority points out that counsel at oral argument conceded that finding a private right of action is a threshold inquiry. However, mere moments after the colloquy the majority cites as evidence of this concession, in an attempt to clarify his position, Denson's counsel was questioned as to whether he liked the template of *Whitlaw v. Kroger*, to which he responded, "I do Your Honor, I do like that

51, 52, 410 S.E.2d 251, 252 (1991). The defendant sold beer to a minor and that minor ultimately wrecked a car while intoxicated, killing his passenger. The passenger's father sued the defendant seller, seeking to use South Carolina statutory law as a basis for the negligence action. *Id.* at 53, 410 S.E.2d at 252. The pertinent statute in *Whitlaw* related to the sale of alcohol to minors, and the Court, rather than create a cause of action stemming from the breach of that statute, ruled that negligence *per se* was the appropriate avenue for recovery. The factors utilized were the same put forth in *Rayfield*: "(1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect." *Id.* at 53, 410 S.E.2d at 252 (quoting *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 103, 374 S.E.2d 910, 915 (Ct. App. 1988)).

Compare those decisions with a pair of cases from the court of appeals denying the use of negligence *per se*. In *Hurst v. Sandy*, a statute requiring the licensure of engineers could not be used in construction litigation to show negligence. 329 S.C. 471, 479, 494 S.E.2d 847, 851 (Ct. App. 1997) (holding that plaintiffs failed to demonstrate that the essential purpose of the licensing statute at issue was to protect against the harm suffered and therefore no duty was breached by its violation). The court noted the purpose of the statute was to, "regulate the practice of engineering by requiring persons who want to engage in this profession be licensed and registered" and not "impose civil liability on private individuals[.]" Accordingly, the court of appeals ruled that the plaintiff's negligence *per se* argument failed "the first prong of the *Rayfield* test." *Id.* at 479, 494 S.E.2d at 851.

---

template. And that template is part of this state's law." *Whitlaw* did not pose a threshold private right of action inquiry as the majority does today and instead used the longstanding negligence *per se* analysis of *Rayfield* in answering whether the plaintiff was owed a duty under the statute. *See* 306 S.C. 51, 410 S.E.2d 251 (1991). Just as error preservation should not be used to trap lawyers in a "gotcha" game, an off-the-cuff response during the heat of oral argument—short of an unequivocal concession—should not be used against the lawyer, particularly when that response is later clarified. *State v. Jones*, 435 S.C. 138, 145, 866 S.E.2d 558, 561 (2021) (stating courts should disfavor using preservation as a "gotcha" game against litigants).

Similarly, in *Wogan v. Kunze*, it was determined that a physician's failure to comply with the reporting requirements of the Medicare Act did not constitute negligence *per se*. 366 S.C. 583, 602, 623 S.E.2d 107, 118 (2006), *modified on other grounds*, 379 S.C. 581, 588, 666 S.E.2d 901, 905 (2008).[13] In *Wogan*, the court of appeals found that the Medicare Act was "not designed to protect from harm" and instead was merely, "to maintain the orderly operation and handling of the program." *Id.* at 603, 623 S.E.2d at 118. Because the statute's essential purpose was *not* to address the kind of harm suffered and the plaintiff was not a member of the class the statute was designed to protect, the court of appeals dismissed the claim and this Court affirmed that holding. *Wogan*, 379 S.C. at 588, 666 S.E.2d at 905. However, today's majority opinion discards our long-standing negligence per se framework, focusing only on whether the statute in question creates a private right of action.[14]

Here, S.C. Code Ann. § 61-2-145(C) is part of the Title 61, which governs the sale and consumption of alcohol in South Carolina. *See*

---

[13] Notably, the court of appeals in *Wogan*, which was subsequently affirmed by this Court, treated the plaintiff's claims for an implied private right of action and negligence *per se* distinctly, engaging in a thoughtful discussion on the limitations of leaving it to courts to find private rights of actions where the legislature does not explicitly do so. *Compare Wogan* at 595, 623 S.E.2d at 114 *with Wogan* at 602, 623 S.E.2d at 117-18. In my view, *Wogan*'s treating of the two claims as distinct is the correct approach given our state's jurisprudence.

[14] I am not alone in arguing these two concepts ought to remain distinct. For example, in *Shirley v. Glass*, the Kansas Supreme Court held, "[w]hether these statutes give rise to an independent private cause of action is irrelevant in the present case, however, because [the plaintiff] did not plead a statutory violation as the grounds for her suit. She instead presented a case based on simple negligence." 297 Kan. 888, 894, 308 P.3d 1, 5 (Kan. 2013). Here, the same is true. As recognized by the federal court, Denson brought a negligence action against National Casualty. The question then becomes *not* whether the statute creates an alternative avenue for recovery, but whether the statute can be used within the context of a negligence action to show two of the four requisite elements.

*generally*, S.C. Code Ann. §§ 61-2-10 to 61-10-290. Subsection (A) of the same section reads:

> (A) In addition to all other requirements, a person licensed or permitted to sell alcoholic beverages for on-premises consumption, which remains open after five o'clock p.m. to sell alcoholic beverages for on-premises consumption, *is required to maintain a liquor liability insurance policy or a general liability insurance policy with a liquor liability endorsement for a total coverage of at least one million dollars during the period of the biennial permit or license. Failure to maintain this coverage constitutes grounds for suspension or revocation of the permit or license.*

S.C. Code Ann. § 61-2-145(A) (emphasis added).

Together, subsections (A) and (C) create a regulatory scheme that compels certain, high-risk, alcohol-selling establishments to possess $1 million in liquor liability coverage for the benefit of the general populace. If they do not, they will not be granted a liquor license and, if their coverage lapses at any point, their insurer is required to notify the Department so that disciplinary action (likely licensure revocation) can induce the restoration of liquor liability insurance. This scheme is clearly intended to benefit the public at large, specifically those likely to encounter inebriated bar patrons on the roadway.

Garland Denson was one of those intended beneficiaries when he was struck and killed by an overserved patron of Royal Lanes bar. In my view, the requirements imposed upon National Casualty to notify the Department of any lapses in liquor liability coverage were intended to protect against the exact harm that Garland Denson and his estate suffered. Plaintiff has clearly shown duty and breach through the appropriate use of negligence *per se*.[15]

---

[15] I note that regardless of whether Denson is able to prove causation, that issue is a factual question for the jury and not before the Court. *See Ballou v. Sigma Nu Gen. Fraternity*, 291 S.C. 140, 147, 352 S.E.2d 488, 493 (Ct. App. 1986) ("The question of proximate causation is ordinarily a question of fact for determination by the jury.").

Instead of answering the question asked—whether Denson can pursue an action in negligence—the majority answers a different question: whether the statute at issue—section 61-2-145(C)—created an implied private right of action. It does so by imposing that as a prerequisite to a plaintiff maintaining a simple negligence action. For decades, our courts have utilized the two-pronged negligence *per se* test to answer the question of duty rather than the limitations judicially imposed on the creation of a private right of action, but today, the majority conflates them to preclude any recovery by Denson. That conflation is a stark departure from the law with which I strongly disagree. I would first and foremost answer the question actually posed, and I would do so using the longstanding two-pronged test. Because I would answer the question "yes," I dissent.

**BEATTY, C.J., concurs.**